*324 OPINION OF THE COURT
Lawrence E. Kahn, J.
Stripped of all extraneous allegation, innuendo and plain old-fashioned "mud-slinging”, the sole issue to be determined in the above-captioned CPLR article 78 proceeding is whether it is practicable to ascertain merit and fitness by competitive examination for the position of revenue crimes specialist in the Department of Taxation and Finance.
By correspondence dated February 24, 1986, the Department of Taxation and Finance requested noncompetitive jurisdictional classification for new positions to be created in the Division of Tax Enforcement. The request was reviewed by the New York State Civil Service Commission and, as hereinafter set forth, eventually approved. Thereafter, the instant article 78 proceeding was commenced.
In 1984, legislation was enacted, known as the Tax Omnibus Bill, which called for increased vigilance in the investigation and prosecution of so-called white collar crimes in the area of criminal tax evasion. In response thereto, the Department requested the creation of new positions to be known as tax investigators. For reasons not clearly articulated in the submissions before the court, apparently the Department determined that the duties and minimum qualifications of those positions were inadequate to ensure competent performance as envisioned under the new program. It therefore requested the approval of noncompetitive jurisdictional classification of a new series of positions to be known as revenue crimes specialist.
The request for noncompetitive class designation was sought "in order that they be able to make permanent appointments and also to provide them the latitude to select individuals so that this new program can be staffed with a proper mix of expertise necessary”. At best, the submissions before the court establish that the Commission’s initial reaction to the request was tepid. The memorandum annexed to respondent’s answer as exhibit (D), while acknowledging that the qualifications cannot be determined with any particular precision, clearly indicates that "[i]t’s possible that we can competitively test for this position”. The interoffice memorandum annexed as exhibit (E) states that "[i]n evaluating this as a basis for placing these positions in the non-competitive class one must keep in mind that there are many situations involving new and/or expanded programs where an identical case may be articu *325 lated”. In short, the submissions clearly evidence a scenario whereby the Commissioner of the Department was dissatisfied with the personnel initially hired through competitive examination and, accordingly, sought wider latitude in securing additional personnel without the constraints of civil service classifications and examinations. There is not a scintilla of evidence before the court to sustain petitioner’s blunderbuss allegations concerning the motives of the Department in attempting to hire competent, professional, investigative personnel. However, as all parties are acutely aware, NY Constitution, article V, § 6 establishes a broad public policy that appointments in the State civil service must be made by competitive examinations. Civil Service Law § 42 implements this constitutional mandate by providing that no such positions may be placed in the noncompetitive classification without a rational determination that merit and fitness of the applicants may not be established by competitive examination.
Significantly, this is not a case where the petitioners are challenging the format of an examination (Matter of Esposito v New York State Dept. of Civ. Serv., 83 AD2d 679), but rather, whether any competitive examination shall be held at all. In such an instance, while the Commission is still accorded wide latitude, the rationality of their determination must be reviewed in light of the strong constitutional mandate which requires competitive testing except in those limited instances where a determination of merit and fitness by examination is not possible.
In the case at bar, it is clear that the Department and Commission were able to establish minimum qualifications for the positions of tax investigator I, II, III and IV. It is equally clear that the Department "found that the emphasis originally placed on investigating white collar crime lead to insufficiently stringent minimum qualifications”. Thus, it cannot be seriously questioned that those qualifications were capable of determination. What is apparent is that it was simply the minimum qualifications which were insufficient, rather than the ability to determine merit and fitness by the examination process. As such, the inescapable conclusion is that the qualifications need to be refined, altered or upgraded to reflect the actual qualification requirements for those persons needed to perform the function envisioned by the Commissioner. Vague references to the ability to make permanent appointments or afford greater latitude in the selection process simply do not form a rational basis for abrogating the constitutional man *326 date of examination, in some form, to determine merit and fitness.
The petition shall be granted to the extent that the matter shall be referred to the Civil Service Commission for further administrative proceedings not inconsistent herewith.